CASE No. 1109.

FITZSIMONS v. GUANAHANI COMPANY.

1. The courts of this State will enforce a contract made in another State under a statute of that State, according to the terms of such statute, if its requirements have been complied with.

2. But an inspector of phosphates, in Georgia, cannot recover, for an inspection made in this State, the fees allowed by a Georgia statute; nor an equivalent sum, where the complaint bases its right to a recovery wholly on the Georgia statute.

3. The judge said to the jury: "I suppose it would take me ten years of hard study to qualify myself to perform the duties required of an inspector of phosphates." This was only an illustration of the principle by which the compensation, to be allowed in cases of skilled labor, should be determined, and did not violate Article IV., § 26, of the constitution.

Before THOMSON, J., Beaufort, November, 1880.

Action commenced June 6th, 1877, for the recovery of $750 for the inspection of phosphates at Port Royal, in 1875 and 1876. According to the proof, $40.35 for inspection, and $25 for the chemist, of Georgia, had been paid to the plaintiff. There was no proof whatever, in the case, of the value of plaintiff's services. The testimony was directed to the number of tons

inspected, the contract between the plaintiff and defendant, as to whether plaintiff was to be paid for the number of tons inspected, or only for the number sold in Georgia, how much was shipped to Georgia, and the custom of Augusta merchants in paying for guano inspected outside of their own State. Other matters are stated in the opinion.

The exceptions, quoting the language of the requests to charge, and the charge to the jury, allege errors in the particulars considered in the opinion.

*Mr. William Elliott,* for appellant.

*Messrs. W. J. Verdier* and *J. D. Pope,* contra.

November 15th, 1881. The opinion of the court was delivered by

SIMPSON, C. J. This is an action by O. P. Fitzsimons, plaintiff, respondent, claiming of defendant, appellant, the sum of $750 for services rendered in the inspection of 1,500 tons of fertilizers for defendant.

The complaint alleges that plaintiff was an inspector of fertilizers for the county of Richmond, in the State of Georgia, duly appointed and qualified under the laws of that State. That he was employed by defendant to proceed to Port Royal, in this State, to inspect and analyze a quantity of fertilizers at that place, which defendant expected and desired to sell and distribute in the State of Georgia. That he complied with request of defendant, and did inspect and analyze some 1,500 tons of Guanahani guano for defendant. That the compensation provided by the laws of Georgia to be paid inspectors for the service rendered was fifty cents per ton, which defendant promised to pay. That no part had been paid, and he demanded judgment on that basis.

The answer admitted that plaintiff did, at the the request of defendant, proceed to Port Royal to inspect certain fertilizers which they desired to distribute in the State of Georgia, but it denied that 1,500 tons had been inspected. It also admitted that, under the laws of Georgia, the compensation allowed in-

N

spectors was fifty cents per ton, but it denied that defendant had agreed to pay this sum to plaintiff, except as to so much as should actually be shipped and sold in Georgia; and it claimed that only eighty and one-seventh tons had been thus shipped and sold, for which the plaintiff had been paid in full.

Upon the trial, Judge Thomson presiding, the defendant requested the judge to charge:

1. "That, under the laws of Georgia, an inspector of phosphates cannot inspect fertilizers, intended for sale and distribution in that State, at any place outside of that State, and that plaintiff cannot recover in this action if said fertilizers were inspected outside of the State of Georgia.

2. "That, under the laws of Georgia, each bag, barrel or other package of fertilizers intended for sale or distribution in Georgia must be stamped with the brand of the inspector, and that unless the jury find in this case that the fertilizers were so branded, they cannot find for plaintiff."

His Honor charged the jury as follows:

"As regards the defendant's requests to charge, I charge you that all that is law, but that there was nothing to prevent defendant from employing the plaintiff to come here and perform the service. Of course, when Mr. Fitzsimons came here, he did not come under the laws of Georgia. If you find that the plaintiff was employed by the defendant to perform this service, then you must consider, in this case, what would be reasonable compensation for the plaintiff; and you are not to determine the compensation upon any ordinary standard. In some cases compensation is based upon the actual labor performed, as in case of a day's labor. In other cases, for instance, in cases of surgeons and lawyers, compensation is based upon the amount of skill and the time spent in acquiring the profession. I suppose it would take me ten years of hard study to qualify myself to perform the duties required of an inspector of phosphates."

The jury found for the plaintiff for $750. A motion was made for new trial, on the judge's minutes, on the ground of excessive damages. The judge entered an order: That a *remittitur* of $65.75 be entered on the verdict, the amount paid by the defendant, within ten days, or a new trial be granted. The

*remittitur* was entered by plaintiff and judgment was entered up for $684.25 and costs.

The defendant has appealed, alleging error in the judge's charge as above, after ruling as requested, and also because the judge charged on matters of fact by saying to the jury: "Gentlemen, I suppose it would take me ten years of hard study to qualify myself to perform the duties required of the plaintiff."

Under an act of the State of Georgia providing for inspection of fertilizers, inspectors duly appointed and qualified are allowed fifty cents per ton for all fertilizers inspected and analyzed, &c., by them, provided the services are rendered within the territorial limits of the State. When thus rendered, the act itself raises a contract between the employer and the inspector, that the employer shall pay fifty cents per ton in cash on every ton so inspected and analyzed.

This act in itself has no force in South Carolina upon a contract made here, but upon a contract made in the State of Georgia, and attempted to be enforced here because of the residence of defendant in this State, our courts would assume jurisdiction, and, upon the principle that in the construction of contracts the *lex loci contractus* governs, would enforce the contract, according to the terms and meaning of the act of Georgia, under which it was made. But in such case it should appear that the requirements of the act have been complied with on the part of the plaintiff.

Now, the plaintiff, in his complaint, bases his right to sue on the ground that he is an inspector in the county of Richmond, in the State of Georgia, duly appointed and qualified, and he states his compensation of the amount allowed inspectors by that act, to wit, fifty cents per ton, and he introduces no other testimony as to the value of his services. The action, then, has been instituted under the statute of the State of Georgia. But, as we have already said, this statute applies only to services rendered by inspectors within the limits of the State; it has no application to services performed outside of the State.

It being admitted, then, in this case that the plaintiff's claim is founded entirely upon inspection and analysis made at Port Royal in South Carolina, it follows, necessarily, that the statute

of Georgia has no application to it either in this State or in Georgia, and the judge below properly charged the jury that plaintiff could not recover by virtue of the statute of Georgia.

The judge, however, also charged that there was nothing to prevent the defendant from employing the plaintiff to come here and perform the services rendered, saying to the jury : "Of course, when Mr. Fitzsimons came here he did not come under the laws of Georgia."

There can be no doubt but that the defendant had the right to employ Mr. Fitzsimons or any one else to inspect his fertilizers either at Port Royal or at any other place, and in such case, if no special contract was made between the parties as to compensation, that matter would be governed by the character and value of the services rendered, to be determined by the jury on the facts proved, and the amount of skill displayed and the time spent by the inspector in fitting himself for such work would enter largely into that question.

The propositions of law then laid down by the judge we think were entirely correct in the abstract, and would have been correct here if this action had been founded upon a *quantum meruit.* But the action was not founded upon a claim of that kind ; it was brought on a special contract alleged to have arisen under the provisions of the statute of Georgia referred to. This being so, the effect of the judge's charge was to change the nature of the action, during the progress of the trial, from an action on a special contract, which the pleadings prescribed and which the parties had met to have adjudicated, to an action on a *quantum meruit,* which did not appear in the pleadings and which, therefore, was calculated to take the defendant by surprise.

Under the liberal provisions of the code as to amendments, it may be that all this might have been done on motion, by leave of the court, either before or after verdict, if, in the judgment of the court, the facts proved had warranted such an amendment ; but there should have been a motion to that effect so as to have given the defendant an opportunity to be on hand, especially in this case, where, from the statements in the brief, it appears that no testimony whatever was offered as to the value

of plaintiff's services, as to his skill, or of the time which he had spent in preparing himself to perform the duties of an inspector.

As far as we can see, the jury must have applied the statute of Georgia in measuring plaintiff's compensation. No other testimony appears in the case on that subject, and they must have relied upon this act.

We think it was error on the part of the judge thus, in the midst of the conflict, to change the whole character of the action from the cause upon which it was originally established, to a new basis not appearing in the pleadings, and without opportunity on the part of defendant to meet and resist it. The first exception of appellant is therefore sustained.

The second exception, as to the charge of the judge upon the facts, cannot be sustained. We find nothing obnoxious to Article IV., Section 26, of the constitution in what he said to the jury upon the facts.

His statement "that it would take him ten years' hard study to qualify himself to perform the duties required of the plaintiff" does not appear to have been charged upon the facts in the sense of the inhibition of the constitution. There was no intimation in this as to what had been proved; but what he said was intended rather to illustrate the principle of law which he had laid down: That the measure of compensation which should be applied to a case of this sort was different from an ordinary case of claim for daily labor. We see no error in this.

This case, however, must be sent back upon the first ground.

It is the judgment of this court that the judgment of the Circuit Court be reversed, and the case be remanded.

McIVER and McGOWAN, A. J.'s, concurred.